IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO.s 5:14-CT-3039-FL;
5:14-CT-3147-FL;
5:14-CT-3273-FL

| | | |
|---|---|---|
| RONALD MCCLARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOSEPH LIGHTSEY, MITCHELL | ) | |
| LAWSON, NURSE HENDERSON, | ) | |
| and NURSE SIERRA, | ) | |
| | ) | |
| Defendants. | ) | |

The matter now comes before the court on defendants' motions for summary judgment (DE 42, 55, 66). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' respective motions for summary judgment and declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

## STATEMENT OF THE CASE

For ease of reference the statement of the case as set forth in the court's February 8, 2016, order is as follows:

> Plaintiff filed McClary I on February 5, 2014, and named defendant Joseph Lightsey ("Lightsey") and the North Carolina Department of Public Safety ("DPS") as defendants in the action. Plaintiff alleged that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution by failing to provide him surgery for his hernia. Plaintiff subsequently filed two motions to amend his complaint and alleged that defendants Lightsey, Mitchell Lawson ("Lawson"), Nurse Henderson ("Henderson"), and Nurse Sierra ("Sierra") acted

with deliberate indifference to plaintiff's urological needs in violation of the Eighth Amendment. Plaintiff additionally alleged in an amended pleading that defendant Lightsey acted with deliberate indifference to his serious medical needs when Lightsey punched plaintiff in "the womb," on March 14, 2014, after having surgery.

On October 7, 2014, the court entered an order in McClary I and granted plaintiff's motions to amend. The court additionally dismissed without prejudice plaintiff's claim that Lightsey and DPS failed to provide plaintiff with surgery for his hernia on the grounds that plaintiff failed to comply with 42 U.S.C. § 1997(e)a's requirement that he exhaust his administrative remedies prior to filing this action. The court additionally dismissed without prejudice plaintiff's claim that Lightsey punched plaintiff in the womb on March 14, 2014, for failure to exhaust administrative remedies because it arose subsequent to the date plaintiff filed this action. Finally, the court DIRECTED plaintiff to notify it whether plaintiff exhausted his administrative remedies for his remaining claims against Lightsey, Lawson, Henderson, and Sierra prior to filing McClary I.

Plaintiff subsequently responded to the court's October 7, 2014, order. Then, on November 7, 2014, the court entered an order vacating the October 7, 2014, dismissal of plaintiff's claims for failure to exhaust and noted an intent to reserve the issue for a later date. The court also allowed plaintiff to proceed with his Eighth Amendment claims against Lightsey, Lawson, Henderson, and Sierra. Plaintiff subsequently filed two motions to amend his complaint in McClary I, as well as a motion for discovery.

On June 9, 2014, plaintiff filed a second § 1983 action *pro se* in McClary II. Plaintiff alleged that Lawson acted with deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment because Lawson refused to provide medical care despite the fact that plaintiff had symptoms of prostate cancer.

Finally, on October 30, 2014, plaintiff filed a third § 1983 action *pro se* in McClary III naming Lightsey as a defendant. Plaintiff alleged that Lightsey acted with deliberate indifference to his serious medical needs because Lightsey refused to provide post-operative care following plaintiff's hernia surgery. Plaintiff subsequently filed a motion to amend his complaint.

2

On December 16, 2014, the court entered an order consolidating McClary I, II, and III, and designated McClary I as the lead case. The court granted plaintiff's motions to amend and directed him to file a particularized complaint. The court also denied plaintiff's motion for discovery as premature. Finally, the court directed the clerk of court to add Lawson, Henderson, and Sierra as defendants in this action. On December 30, 2014, United States Magistrate Judge Robert B. Jones, Jr. signed a consent order, filed by defendant Lightsey, governing the production of confidential information by the North Carolina Department of Public Safety ("DPS").

On January 6, 2015, plaintiff filed his particularized complaint, and then filed a motion for the production of documents and a pleading captioned "Brandeis Brief," which the court construed as an additional response to its December 16, 2014, order. Defendant Lightsey filed a motion for an extension of time to file an answer to plaintiff's particularized complaint.

On February 13, 2015, the court entered an order stating that plaintiff's amended pleading and "Brandeis Brief" were unclear and again directed plaintiff to file one particularized complaint. The court additionally denied as moot defendant Lightsey's motion for an extension of time to file an answer and denied without prejudice plaintiff's motion for production of documents. On February 23, 2015, plaintiff filed his particularized complaint. Defendant Lightsey again moved for an extension of time to answer plaintiff's second particularized complaint. Plaintiff then filed a motion to compel the appearance of defendants, which the court construed as a motion to expedite. On March 11, 2015, the court entered an order allowing plaintiff to proceed with his action against defendants Lightsey, Mitchell, Lawson, Henderson, and Sierra. The court also granted defendant Lightsey's motion for an extension of time to answer and denied plaintiff's motion to expedite.

On April 12, 2015, the North Carolina Attorney General, acting pursuant to Standing Order 14-SO-02, informed the court that it believed that the party plaintiff identified as "Nurse Sierra" was Heriberto Sierra, and provided an address for service in Greensboro, North Carolina. The United States Marshals Service served Heriberto Sierra at the addressed provided by the attorney general on April 21, 2015. On May 12, 2015, Heriberto Sierra filed a pro se motion to dismiss arguing that he is not the "Nurse Sierra" identified in the complaint, and that he has never worked for the North Carolina Department of Correction. In response, the attorney general informed

3

the court that it had provided an incorrect address for serving defendant Sierra. As a result, on May 15, 2015, the court entered an order quashing the service of Heriberto Sierra, and denying as moot the pending motion to dismiss. Defendant Sierra properly was served on May 6, 2015.

In the interim, plaintiff filed a motion for discovery and a motion to compel. On April 27, 2015, defendant Lightsey filed a motion for a protective order and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. 1997e(a) prior to filing this action and that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed. On May 7, 2015, plaintiff filed a motion for leave to file ex parte and later filed a motion to delay ruling on defendant Lightsey's motion to dismiss as well as a motion to take the deposition of Nurse Bratcher. Defendant Lightsey filed a motion to strike several of plaintiff's filings.

On May 28, 2015, the court entered an order directing defendant Lightsey to supplement his motion to dismiss to provide evidentiary support, including copies of all grievances that plaintiff filed in relation to this action and a supporting affidavit, for his affirmative defense that plaintiff failed to exhaust his administrative remedies. The court also provided the parties notice of its intent to construe defendant Lightsey's motion to dismiss as a motion for summary judgment and directed the clerk of court to issue a Rule 56 letter. The court, additionally, granted defendant Lightsey's motion for a protective order and denied without prejudice plaintiff's two motions to compel. As for plaintiff's motion for leave to file an ex parte pleading, the court provided plaintiff 14 days to state why his filing should be considered ex parte. The court granted defendant Lightsey's motion to strike in part and denied it in part. The court granted the motion to strike as to plaintiff's first and second responses to defendant Lightsey's answers, but denied the remainder of the motion. Finally, the court denied without prejudice plaintiff's motion to delay ruling on defendant Lightsey's motion to dismiss.

On the same date, plaintiff filed a motion seeking ruling on interrogatories. Then, on June 4, 2015, plaintiff responded to the court's May 28, 2015, order and provided clarification as to his request to file a motion ex parte. On June 17, 2015, defendant

4

Lightsey supplemented his pending motion for summary judgment and submitted the affidavit of Finesse G. Couch.[1] Plaintiff responded to defendant Lightsey's supplemental filing, and defendant Lightsey replied. On July 7, 2015, defendant Sierra filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was fully briefed. On September 2, 2015, defendant Sierra filed a motion for a protective order, which also was fully briefed.

(DE 8, pp. 1-5).

On February 8, 2016, the court conducted a review of plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The court dismissed plaintiff's official capacity claims and dismissed without prejudice plaintiff's retaliation and state law negligence claims. The court also granted defendant Lightsey's motion to dismiss as to plaintiff's request for injunctive relief and to the extent plaintiff failed to exhaust his administrative remedies prior to filing McClary I. Accordingly, the court dismissed without prejudice plaintiff's action designated McClary I, and denied the remainder of Lightsey's motion to dismiss. The court further made the following rulings: denied plaintiff's motion to file *ex parte*; denied without prejudice plaintiff's motion to take the deposition of Nurse Bratcher; denied as moot plaintiff's motion seeking a ruling on interrogatories; granted defendant Sierra's motion to dismiss as to plaintiff's request for injunctive relief and denied the remainder of the motion; granted defendant Sierra's motion for a protective order; and lifted the stay of discovery. The court thereafter issued a case management order setting deadlines for discovery and dispositive motions. Defendants also filed a consent protective order, which the court granted.

---

[1] Defendant Lightsey attached an affidavit filed by Finesse Couch ("Couch") to his answer and Couch filed an affidavit in support of defendant Lightsey's motion for summary judgment. Couch is employed by DPS as the Executive Director of the North Carolina Inmate Grievance Resolution Board. (See Couch Aff. ¶ 2).

5

On February 19, 2016, plaintiff filed a motion for summary judgment, which was fully briefed. On February 29, 2016, plaintiff filed a motion to amend his complaint to supplement his allegations against defendant Lightsey. Defendant Lightsey responded to plaintiff's motion to amend. On May 2, 2016, the court granted plaintiff's motion to amend, but denied his motion for summary judgment. On July 13, 2016, plaintiff filed a motion to compel discovery, and two days later, filed another motion for summary judgment. Plaintiff filed a second motion to compel on July 29, 2016.

In the interim, defendants Henderson and Lawson filed the instant motion for summary judgment arguing that plaintiff failed to exhaust his administrative remedies prior to filing the instant action. Alternatively, defendants argue that plaintiff is unable to establish a constitutional violation and that they are entitled to the affirmative defense of qualified immunity. In addition to their motion, defendants Henderson and Lawson filed a statement of material facts and appendix, which included DPS policies governing administrative remedy procedures. The appendix also included personal affidavits from defendants Henderson and Lawsons as well as affidavits from Portia Lucas, Dontrey Chambliss ("Chambliss"), Dianna Davis-McNeill ("McNeill"), and Quency Abdullah ("Abdullah").[2] The motion was fully briefed. As part of their reply, defendants Henderson and Lawson filed personal supplemental affidavits, as well as supplemental affidavits from Lucas and Aldo Llerena ("Llerena"), a Polk correctional officer.

---

[2] During the relevant time period Portia Lucas was the unit manager at Polk, Dontrey Chambliss was a correctional officer at Polk, Diana Davis-McNeill was a Licensed Practical Nurse at Polk, and Quency Abdullah was a correctional officer at Polk. (Lucas Aff.¶ 2; Chambliss Aff. ¶ 2;Davis-McNeill Aff. ¶ 2; Abdullah Aff. ¶ 2).

On August 2, 2016, defendants Lawson and Henderson filed a motion for a protective order, and on the same date, plaintiff filed a motion to continue discovery. On August 8, 2016, defendant Lightsey filed the instant motion for summary judgment arguing that plaintiff is unable to establish a constitutional violation. Lightsey also filed a statement of material facts and an appendix, which included portions of plaintiff's medical records as well as affidavits from defendant Lightsey and Dr. Michael Gordon.[3] The motion was fully briefed. As part of his reply, Lightsey filed a supplemental affidavit. Three days later, defendant Sierra filed the instant motion for summary judgment, asserting the exhaustion defense and arguing that plaintiff is unable to establish a constitutional violation. In support of his motion, Sierra filed a statement of material facts and an appendix, which included his personal affidavit and excerpts of plaintiff's medical records. The motion was fully briefed. Plaintiff subsequently filed motions for leave, motions for leave to file new evidence, motion for perjury charges, and motion for sanctions. Defendants also filed motions to strike during the same time period.

On November 3, 2016, the court denied plaintiff's motions to compel discovery (without prejudice), defendants' motion for a protective order, plaintiff's motions for leave, plaintiff's motions for leave to file new evidence, plaintiff's motion for perjury charges, and plaintiff's motions for sanctions. The court, however, granted plaintiff's motion to continue the discovery period and directed plaintiff to make his discovery requests directly to defendants. The court also allowed plaintiff additional time to supplement his response to defendants' motions for summary judgment. Finally, the court granted defendants' motions to strike in part and denied them in part. The court

---

[3] Dr. Gordon, a surgeon who is not a party to this action, submitted an affidavit in support of defendant Lightsey's motion for summary judgment. (Gordon Aff. ¶ 2).

7

struck plaintiff's pleadings at (DE 98) and (DE 100), but denied defendants' motions to strike any other pleadings. The court also directed the clerk of court to reject and return any of plaintiff's future filings not captioned as either a motion or a supplemental response to defendants' respective motions for summary judgment. Plaintiff thereafter filed a supplemental response to defendants' motions for summary judgment. Defendant Lightsey then filed a reply to plaintiff's supplemental response. Defendants Henderson and Lawson filed an objection and reply to plaintiff's supplemental response. On December 19, 2016, plaintiff filed a pleading captioned "Supplemental Response to Defendants Lawson and Henderson Objection for Production of Documents."

## STATEMENT OF FACTS

The facts viewed in the light most favorable to plaintiff are as follows. Plaintiff's action relates to medical care he received while he was incarcerated at Polk Correctional Institution ("Polk") beginning on October 18, 2013. (Lightsey Aff. ¶ 7 and Ex. 2, p. 1). On December 26, 2013, defendant Sierra examined plaintiff in response to plaintiff's complaints of pain in his lower left abdomen which plaintiff attributed to an old hernia. (Sierra Aff. ¶ 7 and Ex. 2). Defendant Sierra gave plaintiff five days worth of acetaminophen for pain and referred plaintiff to defendant Lightsey. (Id.) The next day, defendant Lightsey examined plaintiff and assessed plaintiff with a non-incarcerated (it was able to be easily reduced) inguinal hernia, and ordered that plaintiff take the laxative Colace twice per day for a period of six months in order to keep plaintiff's intestinal contents moving. (Lightsey Aff. ¶ 10 and Ex. 6). Lightsey also submitted an utilization review ("UR") request for a surgical consultation at Central Prison Hospital for the left inguinal hernia. (Id.) The UR request was approved on January 29, 2014, and an appointment was scheduled for February, 2014. (Id.)

8

On January 2, 2014, plaintiff submitted an inmate declared emergency for his hernia. (Id.¶ 12 and Ex. 7). Plaintiff reported to a nurse that his hernia was painful and that he took two tablets of non-aspirin pain reliever on December 26, 2013, but that the medication was not effective. (Id.) The nurse, in turn, referred plaintiff to Lightsey for further evaluation. (Id.) Then, on January 7, 2014, defendant Henderson responded to four sick-call appointment requests in which plaintiff complained, *inter alia*, of abdominal pain resulting from his hernia. (Id. ¶ 13 and Ex. 8; Henderson Aff. ¶ 10 and Ex. C). The nurse palpated plaintiff's abdomen on the left side and noted that there was no evidence of a knot. (Id.) The nurse assessed plaintiff with hernia pain and noted that a request for pain medication would be made. (Id.) The next day, defendant Lightsey conducted a review of plaintiff's chart, and ordered the following: (1) two 500 mg tablets of Tylenol extended release three times per day for a period of one month; and (2) Zostrix cream (topical analgesic to reduce pain) to the inguinal hernia three times per day for two weeks. (Lightsey Aff. ¶ 14 and Ex. 6).

On January 9, 2016, plaintiff submitted an inmate declared emergency in which he complained of blood in his urine. (Id. ¶ 15 and Ex. 9). A nurse saw plaintiff and noted that plaintiff had two Styrofoam cups with what appeared to be a liquid substance tinged with color. (Id.) The nurse gave plaintiff a cup for an observatory urine sample (a urinary sample obtained while being observed by the nurse), but plaintiff refused stating that he did not have to urinate. (Id.) The nurse instructed plaintiff to notify her when he had to urinate. (Id.) On January 11, 2014, a nurse responded to a sick-call request submitted by plaintiff in which plaintiff complained of blood in his urine, frequent urination, and urine leakage. (Id. ¶ 16 and Ex. 10). The nurse noted that plaintiff's complaints had been addressed through a prior sick call appointment. (Id.) Plaintiff was

9

administered a month's supply of Tylenol on January 12, 2014, for self-administration. (Sierra Aff. ¶ 13 and Ex. 6).

On January 22, 2014, defendant Lightsey reviewed plaintiff's chart and ordered electromagnetic radiation ("x-ray") testing of plaintiff's abdomen to rule out a small bowel obstruction. (Lightsey Aff. ¶ 18 and Ex. 12). The UR request was submitted and approved the next day. (Id.) The x-ray results were negative for any acute process including obstruction or ileus. (Id.) Defendant Sierra then examined plaintiff on January 28, 2014, in response to plaintiff's sick-call requests complaining of hernia pain, painful urination, frequent urination, urine leakage, and blood in his stool. (Id. ¶ 19 and Ex. 13; Sierra Aff. ¶ 10 and Ex. 4). Defendant Sierra informed plaintiff that he would be referred to the camp physician for further evaluation.[4] (Sierra Aff. ¶ 10 and Ex. 4). Defendant Lightsey examined plaintiff the following day. (Lightsey Aff. ¶ 20 and Exs. 6, 14). In the course of the examination, plaintiff reported exquisite soreness around the left inguinal hernia and defendant Lightsey prescribed Levsin (an anti-spasmodic gastorintestinal medication) three times a day for a period of one month. (Id.) Defendant Lightsey, additionally, made the decision to defer treatment of plaintiff's urinary-related complaints pending review of plaintiff's x-ray reports, which were not yet in plaintiff's chart. (Id.)

On February 12, 2014, Lightsey conducted a review of plaintiff's chart and noted that plaintiff's January 24, 2014, x-ray was negative for a small bowel obstruction and a "barely perceptible" inguinal hernia. (Id. ¶ 22 and Ex. 14). Lightsey also ordered that plaintiff undergo a

---

[4] The January 28, 2014, appointment was the last date defendant Sierra conducted an appointment with plaintiff. (Sierra Aff. ¶ 12). Sierra did administer medications to plaintiff in February, March, and April of 2014 on approximately 27 occasions. (Id. ¶ 16 and Ex. 8). Plaintiff refused to take his prescribed medications on several occasions. (Id. ¶ 15 and Ex. 7).

urinalysis with culture and sensitivity, and a prostate specific antigen ("PSA") test to determine whether plaintiff had a urinary tract infection or evidence of potential prostate cancer. (Id.) Based upon the results of plaintiff's urine culture, Lightsey ordered that a second urinalysis and culture and sensitivity be conducted. (Id. ¶ 23 and Ex. 16). Lightsey also prescribed the antibiotic Cipro. (Id.)

On February 21, 2014, plaintiff attended his surgical consultation at Central Prison with Dr. Jonathan Samuel ("Dr. Samuel"). (Id. ¶ 24 and Ex. 17). Dr. Samuel recommended that plaintiff undergo a herniorrhaphy (hernia repair) at Central Prison. (Id.) Upon receiving Dr. Samuel's medical notes, defendant Lightsey submitted a UR request for plaintiff to undergo the herniorrhaphy and ordered that plaintiff take Colace (a stool softener) for a period of three months. (Id. Exs. 16, 17). The UR request for plaintiff's surgery was approved on February 28, 2014, and the surgery was scheduled for March 13, 2014. (Id. Ex. 17).

On March 4, 2014, a nurse examined plaintiff in response to plaintiff's complaints that the Tylenol he was provided was ineffective for treating his hernia pain. (Id. ¶ 25 and Ex. 18). The nurse referred plaintiff's complaint to the camp physician. (Id.) The next day, Lightsey examined plaintiff, and explained to plaintiff that he did not prescribe plaintiff narcotic-containing pain medications because such medications could induce a small bowel obstruction due to the hernia. (Id. ¶ 26 and Ex. 19). Lightsey also assessed plaintiff with a fictitious pain complaint and ordered the following: (1) Norco (hydrocodone/acetaminophen, pain reliever); (2) Tylenol; (3) Lactulose syrup (to prevent constipation); (4) Levsin; (5) a hernia belt; and (6) a nutritional assessment for a high fiber diet. (Id.)

On March 13, 2014, Dr. Samuel performed plaintiff's hernia repair surgery at Central Prison. (Id. ¶ 27 and Ex. 20). At the conclusion of the procedure, plaintiff's skin was closed with Monocryl

11

sutures (which are absorbable) and Mastisol (a liquid adhesive which holds the skin together like glue). (Id.) Plaintiff then was discharged with instructions for the gauze and Tegaderm (surgical dressing) to be removed in 48 hours, no shower for 48 hours, and follow-up appointment two weeks later. (Id.) Dr. Samuel ordered that plaintiff take the medications Colace for seven days and Oxycodone/APAP (a narcotic pain reliever) as needed for pain. (Id.) Plaintiff was seen by a nurse upon his return to Polk. (Id.) The nurse assessed plaintiff with an alteration in comfort related to his hernia repair. (Id.)

The next day, defendant Lightsey examined plaintiff. (Id. ¶ 28 and Exs. 20, 21). Because plaintiff was housed on the High Security Maximum Control ("HCON") unit, he was escorted to and from the medical clinic by at least two correctional officers.[5] (Id. ¶ 28; Chambliss Aff. ¶ 4). The correctional officers and a nurse were present during the examination. (Id.) Defendant Lightsey performed a physical examination of plaintiff which consisted of examination/observation of plaintiff's surgical wound for signs of infection, and Lightsey observed that no swelling or bruising were present. (Id. Exs. 20, 21). Lightsey also palpated plaintiff's abdomen to confirm that plaintiff did not have a hematoma or subcutaneous hemorrhage. (Id.) Plaintiff did not indicate that he experienced any discomfort during the examination and did not ask that the examination be stopped. (Id.)

Defendant Lightsey, additionally, attests in his affidavit that "[a]t no time did I 'punch' [plaintiff's] abdomen or surgical site or handle it roughly. Had I done so, the Mastisol, which is very

---

[5] Correctional Officers Chambliss, Abdullah, and Larry Arney escorted plaintiff to his medical appointment with Lightsey on March 14, 2014. (Chambliss Aff. ¶ 5). According to the investigation of the incident, Larry Arney's statement could not be collected because he no longer worked for DPS. (Lucas Aff. Attach. p. 13).

fragile, would have split, opening the wound to the sutures. The sutures may also have split. Both or either occurrence would have resulted in significant bleeding requiring further medical attention and transport to Central Prison and would have caused significant pain." (Id. ¶ 28). Dr. Michael Gordon, likewise, attested that had defendant Lightsey punched plaintiff as plaintiff alleged, plaintiff "would have expected sequela to have resulted including but not limited to a hematoma, subcutaneous bleeding from the wound, and/or splitting of the Mastisol and/or sutures, opening the wound." (Gordon Aff. ¶ 9). Finally, correctional officers Chambliss and Abdullah, as well as nurse Davis-McNeill, attest that they observed defendant Lightsey's examination of plaintiff on the date at issue and did not observe Lightsey punch or assault plaintiff. (Chambliss Aff. ¶ 6; Abdullah Aff. ¶ 4; McNeill Aff. ¶ 5). Later, plaintiff was found guilty of an A-18 disciplinary offense for knowingly making a false allegation about a staff member. (Lucas Aff. ¶ 9 and Ex. C, p. 1).

On March 19, 2014, Lightsey reviewed plaintiff's chart. (Lightsey Aff. ¶ 29 and Ex. 22). Lightsey ordered that plaintiff's Oxycodone prescription be discontinued due to Lightsey's continued concern that narcotic pain medication could cause a bowel obstruction. (Id.) Plaintiff then was seen by a nurse on April 1, 2014, in response to his complaints of frequent urination and urine leakage. (Id. ¶ 31 and Ex. 23). The nurse then referred plaintiff's chart to defendant Lightsey who ordered the following: (1) Cipro; (2) serum PSA lab test; (3) and a follow-up prostate exam two weeks later. (Id. ¶ 32 and Ex. 22). The result of plaintiff's PSA test was normal. (Id. Ex. 24).


On March 25, 2014, plaintiff filed a grievance asserting that defendant Lightsey punched him on the dressing of his post-surgical wound. (Lawson Aff. Ex. C, p. 10). In response, on April 15, 2014, plaintiff underwent a use of force assessment. (Lightsey Aff. ¶ 33 and Ex. 24). The nurse

performing the assessment noted that plaintiff's surgical incision had healed and that plaintiff did not report any pain. (Id.) Polk prison officials ultimately determined that there was no evidence to substantiate plaintiff's allegation against defendant Lightsey and dismissed plaintiff's grievance. (Lawson Aff. Ex. C, p. 12; Lightsey Aff. Ex. 24).

On April 23, 2014, defendant Lightsey examined plaintiff in connection with plaintiff's complaints of frequent urination. (Id. ¶ 35 and Ex. 26). Lightsey reviewed plaintiff's chart and noted that there were no reports of urinary incontinence made by nursing or custody staff. (Id.) Lightsey offered to perform a prostate examine in the presence of a witness, but plaintiff refused. (Id.) After examining plaintiff, Lightsey ordered the following: (1) nutritional assessment; (2) urinalysis and culture and sensitivity test; (3) serum calcium test; and (4) x-ray of plaintiff's kidney's, ureteral, and bladder ("KUB x-ray") to rule out ureteral kidney calculus kidney stones. (Id.) A UR request for the KUB x-ray was approved on April 24, 2014. (Id.) The results of plaintiff's tests and x-ray were normal. (Id.)

On May 1, 2014, plaintiff was seen in response to complaints of worsening bladder problems including urinary frequency, leakage, and painful urination. (Id. ¶ 37 and Ex. 28). Plaintiff told the nurse that he believed his problems were related to diet and requested to be seen by a urologist. (Id.) Although the nurse advised that plaintiff's complaints would be referred to the physician, plaintiff's chart was not referred to defendant Lightsey at that time. (Id.) On May 21, 2014, Lightsey reviewed plaintiff's chart in response to plaintiff's May 12, 2014, request for a renewal order for Lactulose. (Id. ¶ 38 and Ex. 29). Lightsey then renewed the order for Lactulose and ordered Colace. (Id.)

On June 13, 2014, a nurse referred plaintiff to Lightsey in response to plaintiff's complaints of pain caused by a mesh screen that was implanted during the March 13, 2014, hernia repair

14

surgery. (Id.¶ 42 and Ex. 33). Lightsey, in turn, examined plaintiff and referred him to the surgical clinic at Central Prison Hospital for further evaluation, and the appointment was scheduled for June 24, 2014. (Id.) On June 24, 2014, plaintiff was transported to Central Prison and examined by Dr. A. Meyer ("Meyer"). (Id. ¶ 43 and Ex. 33). Dr. Meyer assessed that plaintiff had probable occlusion with accompanying nerve pain and prescribed plaintiff Naproxen (a non-steroidal anti-inflammatory drugs ("NSAID")) and time. (Id.) On the same date, a nurse examined plaintiff, back at Polk, in response to two sick call requests plaintiff had submitted complaining about pain at the site of his hernia repair. (Id. ¶ 44 and Ex. 34). The nurse noted that plaintiff had been seen at Central Prison for his complaints, and, therefore, no further action was taken. (Id.)

On July 24, 2014, a nurse examined plaintiff in response to plaintiff's complaints of severe stomach pain and pain upon urination. (Id. ¶ 45 and Ex. 35). Plaintiff described his abdominal pain as sharp and intermittent, and stated that it followed the consumption of processed food. (Id.) He also complained of urinary frequency and cloudy urine. (Id.) The nurse performed a urine dip test, which was negative, and noted that plaintiff's urine was clear yellow and without odor. (Id.) The nurse assessed plaintiff with abdominal pain and dysuria (painful urination). (Id.) Clear liquids and Antacids were offered to plaintiff, but he refused. (Id.) The next day, Marc Downs, a physicians assistant, reviewed plaintiff's chart and ordered a urine culture and sensitivity test. (Id. ¶ 46 and Ex. 36). The specimen given for the test was unsuitable for urinalysis, and a request was made for a new specimen. (Id.) After receiving a new sample, the results of the test revealed there was occult blood present in plaintiff's urine. (Id. ¶ 48 and Ex. 38).

On August 25, 2014, defendant Lightsey examined plaintiff and ordered the following: (1) nutritional assessment for a high fiber diet; (2) serum PSA test; (3) serum carcinoembryonic

antigen ("CEA") test; (4) complete blood count ("CBC") with differential and a complete metabolic panel ("CHEM 14"); and (5) a KUB x-ray to rule out a bladder or urethral stone. (Id. ¶ 49 and Ex. 39). The results of the PSA test were normal and the results of the CHEM test revealed that plaintiff had elevated glucose, BUN/creatinine ratio, and ALT levels. (Id. and Ex. 39) The KUB x-ray result was negative for any acute process including obstruction or ileus. (Id.)

On September 19, 2014, a nurse examined plaintiff in response to plaintiff's complaints of pain at the site of his hernia repair. (Id. ¶ 52 and Ex. 42). The nurse advised plaintiff to take a non-aspirin pain reliever if needed, and instructed plaintiff to seek medical attention if the pain became more severe or frequent. (Id.) Lightsey then examined plaintiff on October 1, 2014, in response to plaintiff's complaints of painless hematuria (blood in urine) with nocturia (nighttime urinary frequency). (Id. ¶ 54 and Exs. 41, 44). Lightsey noted that plaintiff's lab work had an incidental finding of 3+ blood in his urine with no visible bleeding or probable cause (no obvious etiology for the blood). (Id.) Lightsey entered a UR request for plaintiff to receive a urology consultation, which was approved. (Id.) Lightsey again examined plaintiff on October 24, 2014, in response to plaintiff's complaints of inguinal pain and request for pain medication. (Id. ¶ 56 and Ex. 46). Lightsey ordered that plaintiff undergo a CBC with differential, CHEM 14, uranalysis, CEA, and a helicobacter pylori test. (Id.) Lightsey also ordered a cancer screening test ("CA-125") and instructed plaintiff to return to the clinic in one week for a follow-up examination. (Id.)

On October 27, 2014, a nurse examined plaintiff in response to plaintiff's complaints of a worsening bladder problem accompanied by urinary leakage. (Id. ¶ 57 and Ex. 47). Plaintiff requested to be placed on Oxybutynin (used to treat frequent urination). The nurse informed plaintiff that Lightsey had ordered diagnostic testing and had scheduled a follow-up examination

16

on October 31, 2014.  (Id.)  Plaintiff returned for his follow-up appointment on November 7, 2014, but refused a physical examination.  (Id. ¶ 59 and Ex. 46).  Plaintiff was transferred from Polk to Lanesboro Correctional Institution ("Lanesboro") on December 12, 2014.  (Id. Ex. 2, p. 1).  Plaintiff saw a urologist in 2015.  ((DE 76), p. 10).

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial.  Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Anderson, 477 U.S. at 250.

B.    Analysis

1.    Exhaustion of Administrative Remedies

Defendants Lawson, Henderson, and Sierra argue that plaintiff failed to exhaust his administrative remedies for his claims against them prior to filing his action.  Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Woodford v. Ngo, 548 U.S. 81, 83-85 (2006); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure

17

to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford, 548 U.S. at 84. Exhaustion is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

DPS has a three step administrative remedy procedure which governs the filing of grievances. See, e.g., Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). The DPS's Administrative Remedy Procedure ("ARP") first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. DOC ARP § .0301(a). If informal resolution is unsuccessful, the DPS ARP provides that any inmate in DPS custody may submit a written grievance on Form DC-410. DOC ARP § .0310(a). If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the Facility Head. Id. at § .0310(b)(1). If the inmate is not satisfied with the decision reached by the Facility Head, he may appeal his grievance to the Secretary of Correction through the inmate grievance examiner. Id. § .0310(c)(1). The decision by the [Inmate Grievance Examiner] or a modification by the Secretary of Correction shall constitute the final step of the Administrative Remedy Procedure. Id. § .0310(c)(6).

18

As stated in the court's February 8, 2016, order in <u>McClary</u> I, plaintiff filed a grievance, No. 3980-14-0211, on January 28, 2014, complaining that defendant Lightsey and medical staff failed to provide him treatment for his bladder/hernia issues. (Lawson Aff. Ex. C, p. 4-6.) Plaintiff completed the administrative remedy process for grievance No. 3980-14-0211 on March 4, 2014, before plaintiff filed <u>McClary</u> II or III. (<u>Id.</u>) Accordingly, plaintiff properly exhausted his complaints which related to his hernia and urological care against defendants Lightsey, Lawson, Henderson, and Sierra.

As for plaintiff's claims that defendants Henderson or Sierra failed to provide him 95 prescribed pills, plaintiff filed a grievance related to such claim on September 24, 2014–grievance number 3980-14-1105.[6] (Lawson Aff. Ex. C, p. 33). Plaintiff did not complete the exhaustion process for grievance number 3980-14-110 until November 12, 2014, which was after plaintiff filed <u>McClary</u> III on October 30, 2014. (<u>Id.</u> at 35). Filing suit before exhausting administrative remedies dooms the action. <u>See, e.g.</u>, 42 U.S.C. § 1997e(a); <u>Hayes v. Stanley</u>, 204 F. App'x. 304, 304 n. 1 (4th Cir. 2006) (per curiam) (holding that failure to exhaust administrative remedies may not be cured by amendment of the complaint). Based upon the foregoing, plaintiff's claim asserting that nursing staff, including defendants Henderson and Sierra, prevented him from obtaining 95 doses of medication is DISMISSED without prejudice for failure to exhaust administrative remedies.

2.      Eighth Amendment Medical Claims

In support of their motions for summary judgment, defendants assert the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages

---

[6]  The court notes that plaintiff names nurse De Sanis as the person responsible for the missed medications, and does not mention defendant Henderson or Sierra in the grievance. (Lawson Aff. Ex. C, p. 33).

so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether plaintiff is able to establish a constitutional violation.

Plaintiff alleges defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted).

The court assumes, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test for his medical-related claims. The court instead focuses its inquiry on the subjective prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to plaintiff's serious medical needs. Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). As stated, "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than

20

acts or omissions for the very purpose of causing harm or with knowledge that harm will result."
See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know
of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka
v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of
treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise,
mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim.
Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir.
1998). In determining whether a prison official is deliberately indifferent to a prisoner's serious
medical needs, the court generally may rely on medical records concerning examination and
treatment of the inmate. See Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981), aff'd, 676 F.2d
690 (4th Cir. 1982); see also, Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face
of medical records indicating that treatment was provided and physician affidavits indicating that
the care provided was adequate, an inmate cannot create a question of fact by merely stating that she
did not feel she received adequate treatment."). The court now will address plaintiff's Eighth
Amendment claims against each defendant in turn.

   a.  Defendant Lightsey

  Plaintiff's medical-related claims against defendant Lightsey including allegations that
Lightsey failed to prescribe any medications related to plaintiff's hernia pain and refused to order
immediate surgery after diagnosing plaintiff's hernia. Plaintiff also alleges that defendant Lightsey
provided him no treatment for his enlarged prostate, and that Lightsey assaulted him during an
examination on March 14, 2014. Plaintiff asserts that the alleged March 14, 2014, assault was done

in retaliation for plaintiff filing a lawsuit against Lightsey. The court now will address each of plaintiff's claims against defendant Lightsey in turn.

Beginning with plaintiff's allegations regarding defendant Lightsey's hernia-related treatment, the record belies plaintiff's allegations that defendant Lightsey failed to prescribe any medications for plaintiff's hernia-related pain. In particular, the record reflects that Lightsey prescribed Tylenol, Levsin, Zostrix HP cream, and Norco, as well as a hernia belt, to treat plaintiff's complaint's of hernia-related pain. (Lightsey Aff. ¶¶ 13, 20, 26 and Exs. 8, 14, 19). After plaintiff's hernia repair, plaintiff was prescribed Oxycodone (a narcotic pain reliever). (Id. ¶ 27 and Ex. 20). Lightsey's decision to discontinue plaintiff's Oxycodone prescription six days post-surgery was based upon Lightsey's belief that narcotic pain medications exposed plaintiff to the risk of a small bowel obstruction. (Id. Ex. 19). Plaintiff's disagreement with Lightsey's decisions with respect to plaintiff's pain management does not rise to a level of deliberate indifference. See Johnson, 145 F.3d at 169; Baker v. Stevenson, 605 F. App'x 514, 520 (6th Cir. Mar. 30, 2015) (upholding the dismissal of a deliberate indifference claim brought by an inmate who was denied access to opiate medications based on his history of substance abuse); see also Cassell v. Dawkins, No. 5:10CV69–03–MU, 2010 WL 2266972, at *2 (W.D.N.C. June 3, 2010) (finding no deliberate indifference where the physician took the inmate off at least one highly addictive narcotic medication and put him on another pain medication) (citations omitted), aff'd, 397 F. App'x 849 (4th Cir. 2010). To the extent plaintiff alleges that Lightsey acted with deliberate indifference because plaintiff missed his post hernia surgery follow-up appointment with Dr. Samuels, there is no indication that the missed appointment was intentional or that defendant Lightsey was responsible for the missed appointment. Further, plaintiff has not alleged any "substantial harm" as a result of

any alleged delay, nor produced evidence that any delay by Lightsey exacerbated plaintiff's injury or unnecessarily prolonged plaintiff's pain. See Abraham v. McDonald, 493 F. App'x 465, 466 (4th Cir. 2012) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (citation omitted); Lightsey Aff. Ex. 24 (April 15, 2014, assessment of plaintiff noting plaintiff's incision had healed and that plaintiff reported no pain). Rather, as stated, the record reflects that Lightsey was responsive to plaintiff's hernia-related complaints and that Lightsey immediately referred plaintiff to the Central Prison surgical clinic when plaintiff complained about discomfort following his hernia repair. (Lightsey Aff. ¶ 42 and Ex. 33). Thus, plaintiff failed to establish a constitutional violation.

The court now turns to plaintiff's contention that defendant Lightsey acted with deliberate indifference to plaintiff's medical needs because Lightsey did not immediately schedule plaintiff for surgery upon discovering plaintiff's hernia. The record reflects that defendant Lightsey discovered plaintiff's hernia on December 27, 2013. (Id. ¶ 10 and Ex. 6). Lightsey then submitted a UR request for the surgical consultation, which was approved on January 29, 2014, and scheduled for February 2014. (Id.) In the interim, defendant Lightsey continued to manage and treat plaintiff's hernia-related symptoms, and continued to provide plaintiff hernia-related care after his surgery. (Id. ¶¶ 28, 42 and Exs. 20, 21, 33). The treatment Lightsey provided was prompt, continuous, and responsive. Thus, plaintiff failed to establish an Eighth Amendment violation against Lightsey in connection with plaintiff's hernia treatment, and defndant Lightsey is entitled to qulaified immunity for this claim. See Russell, 528 F.2d at 319.

As for plaintiff's complaint that defendant Lightsey provided him no treatment for his enlarged prostate, this claim also is belied by plaintiff's voluminous medical records. Specifically,

23

the record reflects that both defendant Lightsey and nursing staff performed numerous diagnostic tests related to plaintiff's urilogical complaints, including a PSA to rule out evidence of prostate cancer and a referral for a urology consultation, which plaintiff attended in 2015. (Lightsey Aff. ¶¶ 18, 22, 23, 35, 37, 49, 56 and Exs. 12, 14, 16, 26, 28, 39, 46; (DE 76), p. 10). Given Lightsey's detailed medical assessments and regular provision of medical care to plaintiff at Polk, plaintiff's allegations amount to nothing more than a disagreement with Lightsey's treatment plan, and are not actionable pursuant to § 1983. See Russell, 528 F.2d at 319. Further, plaintiff's request for specific medications, including Oxybutynin, likewise, amount to a disagreement with Lightsey's treatment and is not actionable. See id.; Jackson v. Lightsey, 775 F.3d 170, 178-179 (4th Cir. 2014) (stating that disagreements between prison physician and pre-incarceration cardiologist as to diagnosis and treatment did not support a claim for deliberate indifference); see also, Cochran v. Lindzau, No. 5:15-CT-3138-BO, 2015 WL 9049810, at *2 (E.D.N.C. Dec. 16, 2015) (" Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.") (citation omitted). Finally, even if Lightsey's treatment of plaintiff was not effective, it does not give rise to a constitutional violation. See, e.g., Russell, 528 F.2d at 319; Johnson, 145 F.3d at167 (finding that negligent acts are not sufficient to establish a constitutional violation); see also, Starling v. United States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009) (finding that treating physician does not act with deliberate indifference where he chooses a different course of treatment than that recommended by a specialist). Thus, plaintiff failed to establish that defendant Lightsey acted with deliberate indifference to plaintiff's prostate-related complaints.

The court next addresses plaintiff's contention that defendant Lightsey punched plaintiff in the abdomen. The record reflects that defendant Lightsey conducted a post-operative examination of plaintiff on March 14, 2013–the day after plaintiff's hernia repair surgery. (Lightsey Aff. ¶ 28 and Ex. 21). Lightsey conducted the medical examination in the presence of nurse Davis-McNeill and two correctional officers–Officers Chambliss and Abdullah. Each of the parties present submitted affidavits stating that they did not observe defendant Lightsey punch or assault plaintiff.[7] (Chambliss Aff. ¶ 6; Abdullah Aff. ¶ 4; McNeill Aff. ¶ 5). Additionally, Lightsey and Dr. Gordon, a non-party surgeon, each attested that plaintiff would have suffered an injury, including bleeding and possibly the opening of the wound, if plaintiff's allegations of assault were true. (Lightsey Aff. ¶ 28 and Ex. 21; Gordon Aff. ¶ 9). Plaintiff, however, has presented no medical evidence to suggest that these conditions occurred or that defendant Lightsey punched plaintiff during the March 14, 2014, examination.

Plaintiff's claim, additionally, is belied by the fact that he waited until March 25, 2014, to complain about the alleged assault and that he sustained a disciplinary conviction for knowingly making a false allegation about a staff member after Polk staff conducted an investigation into the matter. (Lawson Aff. Ex. C, p. 10; Lucas Aff. ¶ 9 and Ex. C, p. 1). Finally, in addition to his failure to proffer medical evidence to support his claim, plaintiff fails to support his claim with any non-medical evidence, aside from his conclusory allegations, which are insufficient to establish a

---

[7] Plaintiff asserts that two additional nurses observed the March 14, 2014, examination–Aldo Llerena and Nurse Bussel. However, Llerena submitted an affidavit stating that she was not present during the March 14, 2014, examination. (Llerena Aff. ¶ 6). Plaintiff, however, failed to identify Nurse Bussel when provided the opportunity in the course of Polk's investigation of the incident. (Lucas Supp. Aff. ¶ 6). Plaintiff further has provided no evidence to suggest that Bussel observed the alleged incident or drew a conclusion different from Davis-McNeill or Officers Chambliss and Abdullah.

constitutional violation. See Anderson, 477 U.S. at 257-58 (finding that there must be some "affirmative evidence" presented by the non-moving party to defeat summary judgment).

To the extent plaintiff alleges that defendant Lightsey used a hostile attitude with plaintiff, a hostile attitude, without more, is not sufficient to state a claim for deliberate indifference. See Douglas v. McCarty, 87 F. App'x 299, 301 (4th Cir. Nov. 19, 2003) (finding no deliberate indifference where the plaintiff alleged a nurse "failed to accurately record his medical condition following the altercation and that she exhibited a hostile attitude toward him, do not demonstrate the requisite deliberate indifference to a serious medical need to state a cognizable Eighth Amendment claim. . . ."). Because plaintiff failed to establish a constitutional violation, defendant Lightsey is entitled to qualified immunity for this claim.

Finally, the court addresses plaintiff's related claim that Lightsey punched him in the stomach in retaliation for filing this action.[8] Claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, in a retaliation action alleging First Amendment violations, a plaintiff must establish that the conduct complained of adversely affected his constitutional rights. ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir.1993). Additionally, a plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74–75. Mere,

---

[8] Although the court dismissed plaintiff's general retaliation claims on February 8, 2016. In an abundance of caution the court addresses the instant retaliation claim.

26

"temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory act "is simply too slender a reed on which to rest" a retaliation claim. <u>Wagner v. Wheller</u>, 13 F.3d 86, 90-91 (4th Cir. 1993) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action").

Here, plaintiff's only factual support for his retaliation claim is his conclusory allegations that Lightsey assaulted him because plaintiff filed a lawsuit against him. Plaintiff provides no facts to suggest that the two incidents were related. Plaintiff's conclusory allegations of retaliation are insufficient to allege a constitutional violation. <u>Adams</u>, 40 F.3d at 74. Thus, there is no constitutional violation, and Lightsey is entitled to qualified immunity for this claim.

   b.  Defendants Henderson and Sierra

Plaintiff contends that defendants Henderson and Sierra acted with deliberate indifference to plaintiff's medical needs because they provided plaintiff with aspirin which was not effective to treat his hernia and prostate related complaints. Defendant Henderson and Sierra, both registered nurses, did not have the authority to prescribe plaintiff pain medications other than a non-aspirin pain reliever. (Sierra Aff. ¶ 6; Henderson Aff. ¶ 7; Lawson Aff. ¶ 9). Rather, the prescription of pain medication is a decision reserved to a physician, physician assistant, or nurse practitioner. (<u>Id.</u>) Lightsey, a physician, was treating plaintiff during the relevant time period, and defendants Henderson and Sierra, as nurses, were not in a position to interfere or alter Lightsey's course of treatment, and were entitled to rely on Lightsey's prescribed course of treatment. <u>See</u> <u>Shakka</u>, 71 F.3d at 167; <u>see also</u> <u>Shipley v. Department of Justice Bureau of Prisons</u>, No. 5:10–CT–3153–FL, 2012 WL 3887096, at *5 (E.D.N.C. Sept. 7, 2012) ("As a nurse, Daniel was entitled to rely on a

doctor's medical judgment as to the appropriate course of treatment for a patient's conditions and cannot override the doctor's orders.") (internal quotation and citation omitted).

As for the care Henderson and Sierra personally provided plaintiff, the record reflects that these defendants were responsive to plaintiff's hernia and prostate-related complaints. (See Sierra Aff. ¶ 10 and Ex. 4; Henderson Aff. ¶¶ 10, 17, 21 and Exs. C, D). Moreover, there is no evidence that defendant Henderson or Sierra knew of and disregard any objectively serious condition, medical need, or risk of harm. Rather, as stated, the record reflects that plaintiff received continuous care for his hernia and prostate-related complaints. At most, plaintiff expresses disagreement with the care defendants Henderson and Sierra provided, which is insufficient to establish a constitutional violation. See Russell, 528 F.2d 318–19 (stating that an inmate's disagreement with the course of treatment provided by medical officers will not support an Eighth Amendment claim).

To the extent plaintiff seeks to hold defendant Henderson or Sierra responsible for the fact that he did not receive six pills of the Oxycodone prescribed by Dr. Samuel, plaintiff has provided no evidence to suggest that defendant Henderson or Sierra interfered with his Oxycodone prescription. Rather, the record reflects that Dr. Samuels prescribed plaintiff Oxycodone as needed for pain, and that Lightsey terminated plaintiff's Oxycodone prescription on March 19, 2014. (Lightsey Aff. ¶¶ 27, 29 and Exs. 20, 22). As a result, plaintiff's controlled substances record reflects that the six Oxycodone pills were not missed dosages, but were a surplus of pills leftover from those ordered in response to Dr. Samuel's March 13, 2014, prescription. (DE 45, p. 29). Finally, as nurses, defendants Henderson and Sierra are entitled to rely upon the physicians' orders. See Shakka, 71 F.3d at 167.

As for any missed dosages of Levsin for the time period of January 31, 2014, through February 1, 2014, such conduct was inadvertent and corrected upon discovery. (Lawson Aff. ¶ 18). Plaintiff has not provided any evidence to the contrary. Additionally, to the extent plaintiff asserts that he missed doses of Norco, the record reflects that plaintiff's prescription for Norco was discontinued when plaintiff was prescribed Oxycodone on March 13, 2014. (Lawson Supp. Aff. ¶ 16 and Ex. A). Plaintiff again has failed to provide evidence that defendant Henderson or Sierra intentionally denied plaintiff these medications. In any event, an occasional missed dosage of medication is insufficient to establish a constitutional violation. See West v. Millen, 79 F. App'x 190, 194 (7th Cir. 2003) (an occasional missed dose of medication, without more, does not violate the Eight Amendment). Thus, plaintiff fails to establish a constitutional violation, and defendants Henderson and Sierra are entitled to qualified immunity for these claims. Based upon the foregoing, plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim against defendant Henderson or Sierra, and cannot establish a constitutional violation.[9] Because plaintiff cannot establish a constitutional violation, defendants Henderson and Sierra are entitled to qualified immunity.

---

[9] As stated, plaintiff's claim against defendants Henderson or Sierra for the 95 missed doses of medications is unexhausted. However, the court notes that plaintiff failed to provided any factual support or evidence to suggest that defendant Henderson or Sierra were personally involved with any missed medications. A § 1983 plaintiff must allege the personal involvement of a defendant. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009); see, e.g., White v. White, 886 F.2d 721, 723 (4th Cir.1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978). Rather, plaintiff relies upon general references to his medication logs and his own conclusory allegations that defendant Henderson and Sierra were responsible for any missed medications. (See (DE 108), pp. 1-2) (plaintiff admits that he is unsure which nurses were responsible for dispensing medications)). This is insufficient to establish an Eighth Amendment violation for these claims. See Iqbal, 556 U.S. at 681 (citation omitted); see, e.g., White, 886 F.2d at 723 (stating minimum level of factual support required).

c.  Defendant Lawson

Plaintiff asserts that he made defendant Lawson aware of defendant Lightsey's alleged Eighth Amendment violations and that Lawson did nothing.  Given the fact that the court determined that plaintiff failed to establish an Eighth Amendment violation against defendant Lightsey, plaintiff's supervisor liability claim against defendant Lawson lacks merit.  See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, no § 1983 liability attaches to a supervisor); Thomas v. Holly, 533 F. App'x 208, 221 (4th Cir. 2013) (noting that a finding of bystander liability for a defendant required a finding of excessive force by another defendant).  Additionally, because the court has determined that there is no Eighth Amendment violation, defendant Lawson is entitled to qualified immunity for such claims.[10]

To the extent plaintiff seeks to hold defendant Lawson liable for Lawson's participation in the administrative remedy procedure for plaintiff's complaints, plaintiff is not entitled to relief because he does not have a constitutional right to have available or to participate in an effective grievance process.  See Adams, 40 F.3d at 75; see also, Oliver v. Myers, No. 5:7:08-CV-558, 2008 WL 5212409, at *4 (W.D. Va. Dec. 12, 2008) (stating that "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts") (citation

_____

[10] The court notes that plaintiff has not demonstrated that defendant Lawson personally acted with deliberate indifference to plaintiff's serious medical needs in connection with plaintiff's hernia or urological complaints.  Rather, as stated, plaintiff received continuous care for both medical issues.

omitted), <u>appeal dismissed</u>, 335 F. App'x 317 (4th Cir. 2009). Thus, plaintiff failed to establish a constitutional violation and defendant Lawson is entitled to qualified immunity.

4. New Claims

Plaintiff's filings are voluminous and the court permitted him several opportunities to amend his complaint. To the extent plaintiff seeks to assert new claims arising in his response to defendants' motion for summary judgment, or any other filing, such claims are not properly before the court because plaintiff has not requested leave of court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a) to include any new claim.[11] Thus, plaintiff's new claims are DISMISSED without prejudice. <u>See</u> <u>United States v. Jones</u>, No. 87-7313, 1988 WL 21257, at *1 (4th Cir. Mar. 9, 1988) ("Even under liberal rules of interpretation, a court should not be required to amend a complaint sua sponte every time a pleading is filed which arguably raises a new claim."); <u>see also</u>, <u>Crump v. N.C. Dep't of Corr</u>, No. 3:05CV325-02-MU, 2009 WL 2738459, at * 5 (W.D.N.C. Aug. 26, 2009).

5. Supplemental Jurisdiction

To the extent plaintiff alleges any state law claim, including one for assault, the court declines to exercise jurisdiction over such claim. A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); <u>see</u> <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995); <u>see also</u>, <u>Gantt v. Whitaker</u>, 203 F. Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the

---

[11] The court notes that plaintiff's claims related to his special diet were not set forth in his amended complaints. (<u>See</u> DE 9, 18). Lightsey, however, was responsive to plaintiff's diet-related complaints. (<u>See</u> Lightsey Aff. ¶ 59).

sheriff's official bond), aff'd, 57 F. App'x 141 (4th Cir. 2003). The court has dismissed plaintiff's § 1983 claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' respective motions for summary judgment (DE 42, 55, 66). The court DISMISSES plaintiff's claim regarding 95 missed pills without prejudice to allow plaintiff the opportunity to exhaust his administrative remedies. The court DISMISSES plaintiff's state law negligence claims and any newly raised claims without prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 2nd day of March, 2017.


LOUISE W. FLANAGAN
United States District Judge